# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ROBERT DUPREE, JR., | CV F   04-6374 AWI SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| TOM L. CAREY, Warden | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

On April 25, 2001, Petitioner pled no contest to two counts each of lewd and lascivious conduct with a child under the age of 14 (California Penal Code, § 288, subd. (a)),[1] and pimping (§ 266H, subd. (a) & (b)), and one count each of child abuse (§ 273A, subd. (a)), furnishing a controlled substance to a minor (Health & Safety Code, § 11353) and abduction of a minor for prostitution. (§ 267). (CT 190.) On June 3, 2001, the court sentenced Petitioner to an aggregate term of 13 years.

Petitioner filed a timely notice of appeal to the California Court of Appeal, Fifth Appellate District. Petitioner filed a brief asking the court to review the record for error pursuant to People v. Wende, 25 Cal.3d 436 (1979). On November 20, 2002, the Fifth District Court of

---

[1] All further statutory references are to the California Penal Code, unless otherwise indicated.

1

Appeal found that no reasonable arguable factual or legal issues existed and affirmed the judgment. (Respondent's Lodged Doc. No. 1.)

On April 8, 2003, Petitioner filed a petition for writ of habeas corpus with the California Court of Appeal, Fifth Appellate District. (Lodged Doc. No. 2.) This petition was denied on May 22, 2003. (Lodged Doc. No. 3.)

On August 18, 2003, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court. (Lodged Doc. No. 4.) The petition was denied on May 12, 2004. (Lodged Doc. No. 5.)

Petitioner filed the instant petition for writ of habeas corpus on September 30, 2004. Respondent filed an answer to the petition on January 19, 2005, and Petitioner filed a traverse on March 11, 2005.

STATEMENT OF FACTS[2]

> [Petitioner], pled no contest to two counts each of lewd and lascivious conduct with a child under the age of 14 (Pen. Code, § 288, subd. (a)/counts 1 and 2), and pimping (§ 266H, subds. (a) & (b)/counts 3 and 6), and one count each of child abuse (§ 273A, subd. (a)/count 4), furnishing a controlled substance to a minor (Health & Safety Code, § 11353/count 5) and abduction of a minor for prostitution. (§ 267/count7). On June 3, 2001, the court sentenced [Petitioner] to an aggregate term of 13 years.

Lodged Doc. No. 1, at 2.

DISCUSSION

A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

---

[2] Because Petitioner pled guilty, the statement of facts is taken from the unpublished opinion of the California Court of Appeal affirming Petitioner's judgment. (Lodged Doc. No. 1.)

2

1    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act
2 of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
3 enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S.
4 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting
5 Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.
6 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059
7 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant
8 petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.
9 B.    Standard of Review
10    This Court may entertain a petition for writ of habeas corpus "in behalf of a person in
11 custody pursuant to the judgment of a State court only on the ground that he is in custody in
12 violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).
13    The AEDPA altered the standard of review that a federal habeas court must apply with
14 respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.
15 Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus
16 will not be granted unless the adjudication of the claim "resulted in a decision that was contrary
17 to, or involved an unreasonable application of, clearly established Federal law, as determined by
18 the Supreme Court of the United States;" or "resulted in a decision that was based on an
19 unreasonable determination of the facts in light of the evidence presented in the State Court
20 proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of
21 the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.
22 Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply
23 because that court concludes in its independent judgment that the relevant state-court decision
24 applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations
25 omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).
26    While habeas corpus relief is an important instrument to assure that individuals are
27 constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392
28 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

1 criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v.
2 Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's
3 factual determinations must be presumed correct, and the federal court must accept all factual
4 findings made by the state court unless the petitioner can rebut "the presumption of correctness
5 by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115
6 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,
7 110 F.3d 1380, 1388 (9th Cir. 1997).

Application of these standards is significantly impeded where, as here, the state court supplies no reasoned decision. Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir.2000).  Under such circumstances, the Court independently reviews the record to determine whether the state court clearly erred in its application of Supreme Court law. Delgado v. Lewis, 223 F.3d at 982 ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law."); see also e.g. Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir.2002).  That is, although the Court independently reviews the record, it still defers to the state court's ultimate decision.

C.   **Trial Court's Advisement Regarding Nature of Offenses and Good-Time Credit Rate**

Petitioner contends that the trial court failed to advise him that he would be receiving 15 percent custody credits rather than 50 percent custody credits following his conviction.[3]

---

[3] To the extent Petitioner contends that the trial court failed to advise him as to the nature of the charges to which he was pleading, Petitioner's claim is unexhausted, as it was not presented in his habeas corpus petition to the California Supreme Court.  (See Lodged Doc. 4)   In any event even if the Court excused the failure to exhaust, the claim is without merit.  28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the Courts of the State.")  In reviewing Petitioner's claim, Petitioner's no contest plea must be placed in the context in which it arose.  See Brady v. United States, 397 U.S. 742, 749 ("The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it."  Petitioner pled guilty after the jury was sworn and the trial was set to begin.  (CT 213.)  Petitioner was arraigned on the Information, which charged Petitioner with two counts of lewd conduct with a child (Pen. Code, § 288, subd. (a); two counts of pimping (Pen. Code, § 266H, subds. (a) and (b); child abuse (Pen. Code, § 273A, subd. (a); furnishing a controlled substance to a minor (Health & Saf. Code, § 11353), and abduction of a minor for prostitution. (Pen. Code, § 267.)  (CT 58-62.)  The prosecutor accepted Petitioner's late plea only because he was pleading to all the charges contained in the Information. At the time of plea, the trial court orally advised Petitioner of his rights, including trial by jury, confrontation and cross-examination, the privilege against self-incrimination, the right to testify, to present evidence and a defense, and the right to subpoena witnesses.  (CT 132-133.)  Petitioner stated that he understood those rights and gave them up.  (CT 133-134.)  See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court [indicating a plea

4

Petitioner presented this claim to the California Supreme Court via petition for writ of habeas corpus, which was summarily denied. (Lodged Docs. Nos. 4, 5.)

To satisfy the Constitution, a guilty or nolo contendere plea must be voluntary and intelligent. See e.g., Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 369 (1985); Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711 (1969). If a defendant challenges a guilty plea, the Court must determine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill, 474 U.S. at 56, 106 S.Ct. at 369, *quoting*, North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164 (1970). A plea is knowing and voluntary if the defendant is made fully aware of a plea's direct consequences. United States v. Brownlie, 915 F.2d 527, 528 (9th Cir.1990); Carter v. McCarthy, 806 F.2d 1373, 1375 (9th Cir.1986). While the trial court must inform the defendant of all direct consequences of a plea, the defendant does not have to be informed or aware of all collateral consequences of that plea. Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir.1988). "The distinction between a direct and collateral consequence of a plea turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Id. at 236. Whether a consequence is collateral often rests on whether it's occurrence is in the hands of the defendant himself. Id.; Carter, 806 F.2d at 1375.

It has been held that advisement regarding good time credits is a collateral consequence of which a defendant need not be directly advised prior to pleading guilty. Bunker v. Wise, 550 F.2d 1155, 1157 n.5 (citing Fruchtman v. Kenton, 531 F.2d 946, 949 (9th Cir. 1976), and cases cited therein); see also Johnson v. Puckett, 930 F.2d 445, 448 n.2 (5th Cir. 1991), cert. denied, 502 U.S. 890; Hutchison v. United States, 450 F.2d 930, 931 (10th Cir. 1971). Further, as stated by Respondent, the trial court does not determine at what rate Petitioner earns custody credits. Such a determination is left to the state Director of Corrections, See Penal Code, §§ 2930-2935;

---

is being made voluntarily] carry a strong presumption of verity.") Further, and of significant note, Petitioner agreed and initialed the plea form specifically advising him that the preliminary examination would form the factual basis for his plea. (CT 126-127, 136.) At the time of taking Petitioner's plea, the trial court restated all seven charges as outlined in the Information, to which Petitioner pled no contest. (CT 135.) Based on the record in this case, Petitioner's claim that he did not understand the nature of the charges to which he was pleading is wholly unfounded and without merit.

1  People v. Chew, 172 Cal.App.3d 45 (1985), overruled on other grounds in People v. Buckhalter,
2  26 Cal.4th 994A (2001).  Also, it is noteworthy that Petitioner was advised of his maximum
3  exposure.  The trial court informed Petitioner that the term would be a maximum of 20 years.
4  (Petition, Exhibit A, at 1, 4; CT 129.)  Consequently, the trial court adequately advised Petitioner
5  of his possible sentence.  Further, as Respondent points out, Petitioner cites no Supreme Court
6  authority and the Court has found no such authority that requires a trial court to advise a
7  defendant of the percentage at which he will accrue post-sentence good time custody credits.  In
8  fact, the available Circuit authority specifically suggests otherwise.  As such, the state courts'
9  determination of this issue was not contrary to, or an unreasonable application of, clearly
10 established Supreme Court precedent.[4]

11 D.     Voluntariness of Guilty Plea/Ineffective Assistance Counsel

12     Petitioner contends that he was not afforded effective assistance of trial counsel when his
13 counsel failed to accurately convey the plea agreement to him prior to his plea.[5]  Petitioner
14 contends that his trial counsel told him that the plea agreement was that he would be sentenced to
15 between 10 and 20 years, and that he would accrue 50 percent post conviction custody credits
16 toward his sentence.  Petitioner points out that his trial counsel informed him, in error, regarding
17 custody credits.  As a result, Petitioner contends that he did not enter his guilty plea knowingly
18 and voluntarily as he relied on the 50 percent custody credits (rather than the 15 percent that he
19 received) in making his decision to plead guilty.  Petitioner presented this claim to the California
20 Supreme Court in a petition for writ of habeas corpus that was summarily denied on the merits.
21 (Lodged Docs. Nos. 4, 5.)

---

[4] Respondent's contention in his answer that "Petitioner's *unexhausted* claim should be rejected or dismissed" (Answer, at 6) (emphasis added), is misplaced, as Respondent specifically concedes that this claim was presented to the California Supreme Court for review and is therefore exhausted.

[5] To the extent Petitioner contends that trial counsel was ineffective for failing to file a certificate of probable cause on appeal, Petitioner's claim is without merit.  Pursuant to the guilty plea, Petitioner waived his right to appeal. (CT 126.)  Even assuming without deciding that trial counsel was ineffective for failing to file a certificate of probable cause on appeal on Petitioner's behalf, the record demonstrates that Petitioner, through appointed appellate counsel, was able to not only seek relief from default in failing to file a timely request for a certificate of probable cause, but also filed a brief pursuant to People v. Wende, 25 Cal.3d 436 (1979) in the California Court of Appeal for the Fifth District. (Clerk's Supplemental Transcript at 1-36; Respondent's Lodged Doc. 1.)  Thus, Petitioner could not have been prejudiced by trial counsel's failure to file a certificate of probable cause on appeal.

6

Case 1:04-cv-06374-AWI-SMS   Document 16   Filed 12/10/07   Page 7 of 16

A defendant who pleads guilty on the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not "within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449 (1970) (1970); see also, e.g, Shah v. United States, 878 F.2d 1156, 1158 (9th Cir. 1989); Hudson v. Moran, 760 F.2d 1027, 1030 (9th Cir. 1985). In Hill, the Supreme Court applied the test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984) to attacks on guilty pleas based on allegedly ineffective assistance of trial counsel. Hill, 474 U.S. at 56-60, 106 S.Ct. at 369-71.

Under Strickland, the reversal of a conviction is required if counsel's errors were so serious that counsel was not functioning as the Sixth Amendment guaranteed counsel, and that counsel's "deficient performance prejudiced the defense." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

First, the petitioner must show that counsel's performance was outside the wide range of reasonable professional judgment considering all of the circumstances. Strickland, 466 U.S. at 687-90, 104 S.Ct. at 2064-66; see also McMann, 397 U.S. at 771, 90 S.Ct. at 1449; United States v. Signori, 844 F.2d 635, 638 (9th Cir. 1988). There is a "strong presumption that counsel's performance f[ell] within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586 (1986), *quoting,* Strickland, 466 U.S. at 689, 104 S.Ct. at 2065; Bloom v. Calderon, 132 F.3d 1267, 1270 (9th Cir. 1997); Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990).

Second, the petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693-94, 104 S.Ct. at 2067-666; Bloom, 132 F.3d at 1271. In other words, the petitioner "must show that there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59, 106 S.Ct. at 370; United States v. Roberts, 5 F.3d 365, 370 (9th Cir.1993).

"[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." Strickland, 466 U.S. at 698. The presumption of correctness applies to "state court findings of fact made in the course of resolving claims of ineffective

7

1   assistance of counsel . . . ." Lambert v. Blodgett, 393 F.3d 943, 977 (9th Cir. 2004).

2       Here, as Respondent submits, it appears that Petitioner's trial counsel was ineffective for
3   failing to properly convey the plea agreement by misadvising the percentage at which Petitioner
4   would accrue post-sentence good time credits. This error was brought to and resolved by the trial
5   court during *three* separate hearings as follows:

> THE COURT: [Petitioner] we've had a lengthy conversation off the record regarding sentencing. You're concerned with the credits whether or not you'll be getting any - - 50 percent credits or only 15 percent credits. You say some representation was made to you by [defense counsel] and Mr. Anderson apparently agreed to that.
> I can tell you we had a conversation in chambers and the only thing that was agreed upon was that 667.61 would not apply so you would not be serving a life sentence if you pled out, and so the 25 year and 50 - - and 15-year minimum time in custody of provision 667.61 would not apply. I don't recall any discussion whatsoever regarding you to be receiving 50 - - 15 percent credits or 50 percent credits, nothing like that, nor was it ever made a condition of the plea that I can recall.
> [PETITIONER]: [Defense counsel], I mean do you remember that statement?
> [DEFENSE COUNSEL]: I remember the statement.
> [PETITIONER]: I remember discussing with [the District Attorney] and figuring a plea in such a way so that you would plead to a charge that carries a 50 percent possible release time instead of 85 percent. I do recall that, yes.
> THE COURT: Okay. Well, there's an issue, then. Okay.
> ...........................................................................................................

(Petition, Exhibit B, RT 801-802, June 13, 2001.)

> THE COURT: Gentlemen, I think we've all read the reporter's transcript of the Change of Plea proceedings and there is no reference to any credit limitation on the plea bargain. The only limitation was regarding Penal Code Section 667.61.
> [DISTRICT ATTORNEY]:[6] Your Honor, in speaking with, since we were last here on the 13th, I spoke with Mr. Anderson and I earlier conveyed this information to counsel that his recollection was that there was no discussion as to half-time credits, but there was a discussion as to the counts involving 288(a)'s, which is consec [sic] - - sentenced consecutively were one third of the midterm as opposed to 288(b)'s, which can be sentenced to a full-term consecutive. And he recalls telling counsel of those facts that most - - if they were sentenced consecutively each one would be his maximum exposure on each count, that would be the full term statute.
> THE COURT: Okay.
> [DEFENSE COUNSEL]: Your Honor, it's my - - it's my recollection and it was my understanding from my discussions with [the District Attorney] that [Petitioner] would be sentenced in such a way or he would plead to charges configured in such a way that he would be eligible for release after having done 50

---

[6] At this hearing on June 15, 2001, a different Deputy District Attorney appeared than the one that negotiated and represented the State at the change of plea hearing.

|   |   |
|---|---|
| 1 | percent of the time.  That was my understanding.  Whether it's mistaken or not, I don't know.  But that was my understanding and I believe that was [Petitioner's] |
| 2 | understanding and it was essential to his decision to accept that offer - - |

percent of the time.  That was my understanding.  Whether it's mistaken or not, I don't know.  But that was my understanding and I believe that was [Petitioner's] understanding and it was essential to his decision to accept that offer - -

THE COURT: [Defense counsel], I'm surprised, because Mr. Anderson [District Attorney] I know when he appears in this court always has a good handle on the sentencing in a case and because of the - -

[DISTRICT ATTORNEY]: I understand this was a - - this was a plea on the sheet so, I mean, there's no way he could have structured it, am I correct?

THE COURT: Well, we actually did because we put a limitation on it.  But I know the 288(a)'s were a problem and if there was no agreement regarding the 667.61 [Petitioner] would - - could receive a sentence of 25 years to life plus, and depending on what sentence kicked in he would have to serve either, I believe, 20 years or less than 15 years before being eligible for probation, so that was a consideration, so that part of it was specifically discussed and we made it a part of the record.  But I don't recall ever talking about what time credits he would get, 15 percent or 50.

[DEFENSE COUNSEL]: It was my understanding that the charges to which [Petitioner] pled to were 50 percent charges, that there weren't any 85 percent charges in there, but - -

THE COURT: 288(a) is a - -

[DISTRICT ATTORNEY]: 80 percent as is the 11353.  It's a serious felony under - -

THE COURT: It was a violent felony - -

[DISTRICT ATTORNEY]: I mean, violent felony under 1192.7, and the 288(a)'s are violent felonies and 667.5's.

[PETITIONER]: Excuse me, Your Honor - -

[DISTRICT ATTORNEY]: I'm not sure, that's why I don't see Mr. Anderson ever having that discussion.

THE COURT: I don't either.  He's been doing this for so many years that he knows what the time credits are that the defendant will be receiving.

[PETITIONER]: May I say something, Your Honor?

THE COURT: Yes.  Yes, sir.

[PETITIONER]: I understand that you spoke on behalf of Mr. Anderson before, Your Honor, you know, with high regards.  The original deal that he first offered me was 3, 6, 8 with half time, so it's not, you know, not totally out of the view of him actually saying half time, and that's what the deal - -

THE COURT: No.  No, that's not true.  I can tell you that, [Petitioner], because when you get to this stage, when you get to a trial court and you have not worked out a deal at this point you're pleading to the sheet.  The D.A. may say, "Okay.  I will do this, strike this, strike that."

I'll agree that 667.61 will not apply but, you know, your bargaining position is not much, sir.

[PETITIONER]: Well, the day that you spoke with me - -

THE COURT: You either plead or go to trial.  He was ready to go to trial that day.  If you were convicted you were looking at 25 years to life plus.  I don't know the total numbers, but you're looking at being locked up for basically forever and you're looking at a 20-year minimum sentence before you qualify for parole, so you're not - - you were not in a good bargaining position, sir.

[PETITIONER]: Well, he had offered the eight years with half time - -

THE COURT: That was earlier.  That was earlier, sir.

[PETITIONER]:  - - on the day that we came into the courtroom here, Your Honor, that's why I'm saying.  When Mr. Payne came back from outside talking - -

THE COURT: Okay.  I agree he did offer an eight and then we started the trial and you refused and you were somewhere in the jury selection process when you decided that things were not looking too good for you, I think, and you

9

decided to plead out.
          [PETITIONER]: Well, my family had came and spoke with me, Your Honor.
          THE COURT: But, you know, there's nothing regarding the time credits.
          [DISTRICT ATTORNEY]: I can see Mr. Anderson mentioning the eight years and I think we must have confused them over half time. I think the confusion comes with that, when they're totaled it's a third of the midterm that could be applied, which is less than half of eight, which is four so - -
          THE COURT: Well, let me see, you say that because I have a letter from an inmate who received a consecutive sentence and he's - - that's his argument, too, that I said he was going to get one-third credits, and what I was doing was I was imposing one third of the midterm on the second count consec[utive] and that's the source of his confusion.
          [PETITIONER]: Excuse me again, Your Honor. I'm sorry, but what counselor here is speaking on is not - - it's not based on the sheet. It was off of one charge. It was based on the one charge that they were trying to get me to take the plea on - -
          THE COURT: Sure.
          [PETITIONER]: - - from the beginning.
          THE COURT: Plead to one and dismiss the rest.
          [PETITIONER]: Correct, Your Honor. So, I mean, when he came, when Mr. Payne came back through the door and Mr. Anderson came in they told me it was the 10 to 20 with half time, and then he said it was just going to be one prior and on and on, and then the way that the process - - the situation of the half time even came to light that it couldn't be, it wasn't by Mr. Payne or Mr. Anderson, it was by the probation officer when he came and interviewed me, and that is why I - -
          THE COURT: Mr. Dupree, let me say something to you, sir and it may or may not make a difference to you, but you entered a plea, and I don't see any time credits being discussed, so I have a hard time believing that Mr. Anderson would make a statement such as he has suggested as he did here regarding the time credits for this plea, sir. Maybe at an earlier discussion it was something like that, but as far as pleading as you did , I just don't see that.
          [PETITIONER]: My belief is as a witness, Your Honor.
          THE COURT: Had you gone to trial, sir, and been convicted, which I think you probably would have, you know, your life is basically over. You'll do a fairly significant time if I sentence you under your plea, and if you want to go to trial and roll the dice and you lose, you know, you're basically going to get locked up and we won't see you again. That's really a choice you have to make. I don't know.
          I - - I hear what Mr. Payne is saying. It was not something that I - - that was brought to my attention because I'm really not concerned with time credits. Sometimes inmates ask about that, and so there will a response to that, but I don't recall anything like that and I can't imagine Mr. Anderson who has worked on these cases for years and years and knows the sentencing schemes and time credits that he would make that statement. I mean, that's just - -
          [PETITIONER]: That's the statement he made, Your Honor.
          THE COURT: And he doesn't recall it. Mr. Orozco is saying he doesn't recall him talking about that, and if he did I'm sure he would say you would get limited time credits. It isn't going to be 50 percent.
          [DISTRICT ATTORNEY]: Just for the record, I mean, I told Mr. Anderson over the phone and he stated, "I know I'm not that stupid." He said something like that.
          THE COURT: He's not stupid at all.
          [DISTRICT ATTORNEY]: That was his statement. He's been doing these types of cases for a while and he knows these are serious felonies.

10

> THE COURT: Sure.
> [DISTRICT ATTORNEY]: You don't get time credits.
> THE COURT: Mr. Payne [Defense Counsel], you specifically remember it at this stage, not at an earlier stage? Are you talking about something else he did say 50 percent?
> [DEFENSE COUNSEL]: That was my understanding and that was why I recommended to [Petitioner] that he take that deal. It's entirely possible that I somehow misinterpreted what Mr. Anderson told me, but that definitely was my understanding.
> [PETITIONER]: And that's why I took the deal, Your Honor.
> ................................................................................................................
> [PETITIONER]: Some time - - I've never been in a state courtroom before, even a federal courtroom, Your Honor, as I've stated before. I'm not - - I'm not following exactly what you're saying to me right now.
> THE COURT: Well, you were facing a lot of years. You were facing a life sentence plus. I forget how many years you were looking at.
> What was it, Mr. Payne, 40 years or so?
> [PETITIONER]: I think you were talking about 88 years to life.
> THE COURT: Basically a lot, sir.
> [PETITIONER]: Yes, sir.
> THE COURT: That was a lot and you were basically not going to get out, so this deal of 667.1 that was not going to be considered was a pretty good deal, and whether it's 50 percent credits or 15 percent credits, I think in your situation you said, hey, you know - -
> [PETITIONER]: It makes a big difference to me, Your Honor. Believe me, Your Honor.
> THE COURT: It makes a huge difference from the 88 years, sir.
> [PETITIONER]: Mr. Payne told me that the maximum - - I would either do five years or 10 years. It made a difference to me, Your Honor. The 20 was just a number that was there. Now, you're saying that the - -
> ................................................................................................................
> THE COURT: Well, I hate being put in this situation where the defendant is saying one thing, his attorney is agreeing with him, and there's nothing on the record regarding this alleged representation, and it seems to me that the primary purpose or the reason that the defendant pled out was because in view - - otherwise he was going to be convicted and he would never see the light of day again, and now he's coming in here and trying to bust the plea. Frankly - -
>
> ................................................................................................................

(Petition, Exhibit B at RT 801- 815, June 13 & 15, 2001.)

At the sentencing hearing and prior to the imposition of the sentence in this case, the following exchange took place:

> THE COURT: [¶] Before I get to the rest of it, [Defense Counsel], the last time you were here Mr. Anderson was not and [Petitioner] raised an issue about his plea stating that he would not have pled but for your representation that he would receive 50 percent credits on any time he might serve in this case. That was not made a part of the record. There was no discussion that I can recall regarding any time credits that was a - - the fact that he might receive those credits was a plea determining factor in his pleading. There was no discussion on the record nor any discussion with me that I can recall.
> Mr. Anderson is here now and we can hear from him as to any representations that would have been made from him to you in that regard, if any,

11

|    |                                                                                                                                                                                                                                                                                                                |
|----|-------|

1  and any statements that may have been made in front of [Petitioner] and [Petitioner's] responsibilities.
2  　　　[DISTRICT ATTORNEY]: Your Honor, I actually called when I was informed of this [defense counsel] and had a discussion with him regarding this.
3  I've reviewed the transcript of the proceedings and have gone back in my memory as to what occurred and there was never any agreement regarding time credits in
4  this case. In fact, given the nature of the pimping and pandering changes on this I think [defense counsel] and I had discussed the fact that this was a non-probation
5  case and that those specific factors regarding 85 percent time credits, I think, were discussed between [defense counsel] and myself.
6  　　　Regarding the 288(a)'s I think there was an issue as to whether or not they would apply half-time credits or - - or not, and at that point in time I don't think
7  we had made a decision on that, but I know, and I can state to the Court as an officer of the court, that I did not guarantee this defendant or defense counsel half-
8  time credits on any of these matters and, in fact, under my research of the cases he is not entitled to have half-time credits on this.
9  　　　THE COURT: That is true. He is not under 2933.1. [Defense Counsel]?
10 　　　[DEFENSE COUNSEL]: Yes, Your Honor.
　　　THE COURT: Anything else other than what you've stated last week that
11 you did, in fact, tell your client that he would be receiving 50 percent credits, at least that was your view of it?
12 　　　[DEFENSE COUNSEL]: Well, Your Honor, I think because this connection is - - is coming to you and to me by way of - - I'm on the phone right
13 now and the conductor is making an announcement, which I hope he'll be done with momentarily. I'm having a lot of trouble hearing you, but I'm pretty sure
14 that I know what's going on right now in the courtroom.
　　　　I've heard what was said. I believe I heard him say that he never made a
15 guarantee. Not only did he not make the guarantee that [Petitioner] would get half time - - or half time but that is, in fact, true that he is not eligible for it. And all I
16 could do is simply restate my understanding as to what was my misunderstanding that he was eligible for half time, which I can make to [Petitioner], and it's my
17 understanding that it was upon that misunderstanding that he agreed to accept the offer.
18 　　　THE COURT: Okay.
　　　[DEFENSE COUNSEL]: That's all I could say about it.
19 　　　THE COURT: Okay. Anything else, Mr. Anderson?
　　　[DISTRICT ATTORNEY]: I'd just note for the record, Your Honor, that
20 the transcript of the proceedings and the Change of Plea form, none of these indicate any half-time credits. We were in the middle of trial in this case and the
21 only reason that I agreed for the defendant to plead was that he plead straight up to all counts.
22 　　　THE COURT: He was facing, I think, as much as 88 years. Is that - -
　　　[DISTRICT ATTORNEY]: That's correct under the sexual strike
23 provisions of the law. The only matters that I agreed that would be stricken would be a determination whether or not this would be a sexual strike. I agreed that for
24 purposes of the plea bargain you would consider it not to be a sexual strike and, in addition, that as far as the prison priors were concerned, that under my review of
25 the - - of the 969(b) packets on the military priors, and that's why he admitted only one prison prior. Otherwise, there would have been no reason for me to
26 accept the plea bargain.
　　　I had withdrawn any plea bargain offers as the Court had withdrawn its
27 indicated once we went to trial, so there's - - there's no reason that we would have accepted to plea for any benefit of a bargain to the defendant other than to stop the
28 process and move forward with this sentencing.
　　　[PETITIONER]: May I speak, Your Honor?

|   |   |
|---|---|
| 1 | THE COURT: Yes, Mr. Dupree. Go ahead. |

        THE COURT: Yes, Mr. Dupree. Go ahead.
        [PETITIONER]: Again, like I stated two weeks ago, Your Honor, Mr. Payne and Mr. Anderson came to me with 10 to 20 with half time. They walked out the door together and then they came back in the door and that is what Mr. Payne had down on the paper. He sat down with the paper in front of me and he wrote - - he told me specifically I would do no more - - no less than five, no more than ten with the 10 to 20 plea with half time, Your Honor.
        THE COURT: There is no 10 to 20 plea, sir, so I don't know - -
        [PETITIONER]: It was no less than 10, no more than 20. It turned out to be, I guess, Mr. Anderson calculated something else and it came out to 19 - - 19 years, four months, but no less than ten years.
        THE COURT: Okay. I know what you're talking about now. Okay. Yes.
        [PETITIONER]: That was the deal. The original was the deal with the half time, Your Honor, that is what - - when Mr. Payne came back in and when Mr. Anderson came back in, when they came back in they spoke about it and that's the deal right there.
        Mr. Payne had given me 26 years before and I wouldn't sign 26 years of my life straight out. It was a 10 to 20 with half time. That is what he told me half time, Your Honor, right here in the courtroom right here in front of Mr. Anderson.
        THE COURT: He said that he told you, sir, and I accept that that's what he told you. He was mistaken on the law, but I accept that, you know, that's his representation to me as an officer of the court, so I have no reason to believe that he didn't say that to you.
        The question for me, though, sir doesn't end there that that's what he told you, whether or not you would have pled regardless of the time credits, and as we've been discussing here in your presence, [Petitioner], and as we discussed last week, you were facing up to 88 years in state prison, which was a life sentence for you, sir. Had you got anything close to that, you would never get out. You knew that.
        We - - when you were assigned to this department I talked to you about a plea and as I remember you were in the neighborhood of about eight years at the time and you declined that for whatever reasons. I don't know. I mean, I guess maybe you thought that the D.A. couldn't prove up his case, or maybe you were hoping for a better bargain, but in any case I believe I told you at that time that I believe I wouldn't bring up the issue again since you were turning down my indicated and that you were going to go to trial and, you know, you were rolling the dice and good luck - -
        [PETITIONER]: Yes, Your Honor.
        THE COURT:  - - on whatever turned up.
        [PETITIONER]: At the point of the plea that I did accept, Your Honor - -
        THE COURT: But, sir, at some point, I don't know why you decided to plead, but I think probably reality hit you and you had decided, "Boy, I'd better cut my losses. It's not going to get any better," and I told you it's not going to get any better. The longer you delayed the proceedings the more time you probably were going to receive.
        At some point you decided to cut your losses, so I don't find it credible that you pled only because you thought you were going to get 50 percent credits. I reminded you again even at that point I would consider your plea to be an early plea and I would consider that as a mitigating factor that you - - I didn't see that you had any other mitigating factors in your case, but I would consider your plea at that time to be a plea at an early stage of the proceedings and within the confines of the bargain that you reached that I would - - that it would be a factor I would consider in sentencing, so I made no promises at how much time you would receive. I simply told you I would consider that and I will, and I've - - it appears to me that based on those representations and what - - the situation you found yourself in that you pled out and - -

13

| | |
|---|---|
|1|     [PETITIONER]: That's not entirely true, sir.|

        [PETITIONER]: That's not entirely true, sir.
        THE COURT:   - - that's not relevant to you.
        [PETITIONER]: That's not entirely true, Your Honor.  Like I said, I spoke with my family.  I spoke with Mr. Payne.  Whether he said it was 10 to 20 with half time, he told me I would do no more than ten years and no less than five years.  I mean, it played a very strong factor in the situation, Your Honor.
        I've never been in the state prison before.  I've been in the feds.  As you know, I've been also in the military prison.  There was charges there that I'm not guilty of, and like I said last - - a couple of weeks ago, Your Honor, you spoke to me.  You told me even if I wasn't guilty of all of these charges to - - it would be best for me to take the plea.  I took all of this into consideration, Your Honor, and when my attorney came to me - -
        THE COURT: Yeah.
        [PETITIONER]: - - with 10 to 20 with half time, I mean, I felt after speaking with my family like, you know, it was okay.  Now, they're saying there was half-time deal and there was, Your Honor.
        THE COURT: Well, there was no half-time deal.  Had there been some half-time deal we would have put it on the record.  I feel I'm convinced of that.  If it was such a big factor that if not for that, according to you, that you would not have pled, that according to that you would have got half time credits.
..................................................................................................................
        THE COURT: Especially, sir, what I've done here is given you a hearing, almost like a writ hearing.  I've listened to you.  I've listened to your attorney.  I've listened to Mr. Anderson.  I'm telling you I'm finding the facts that you would have pled.
..................................................................................................................
        THE COURT: Sir, for these crimes you could have gone to prison for up to 88 years.  That's the reality, and I was frankly surprised that Mr. Anderson stopped.  I mean, if I were he I would have gone through with the trial and wouldn't have done what he did, and you would eat it for just proceeding the way you did.  I mean, you can't continue prolonging and prolonging this to try and get a better deal.

(Petition, Exhibit C, RT 194-205.)

The trial court ultimately concluded that Petitioner would have pled guilty because of the situation he was in. (Id. at 213.)  More specifically, "[t]he time credits were not a critical factor in his making that determination.  It was that he was facing the 88 years.  The district attorney had his witnesses available and he saw that he'd better cut and run and get the best deal he could, and he did.  This is the best that he could get.  It wasn't going to get any better if he went to trial and got convicted, as I believe he would have been convicted." (Id.)  The trial court's resolution of the issue was not an unreasonable application of the facts based on the record, and Petitioner has failed to rebut the trial court's factual findings by clear and convincing evidence. 28 U.S.C. § 2254(d)(2), (e)(1).  As stated by the trial court and submitted by Respondent, Petitioner was facing a possible 88 year to life sentence, the deals the prosecutor was offering were getting increasingly longer in terms of prison time, and Petitioner was on the brink of the trial with the

jury already sworn in.⁷ The trial court pointed out that the prosecution's case appeared very strong and Petitioner would very likely have been convicted had he gone through with the trial. Further, as Respondent correctly points out and detrimental to his claim, is the fact that the difference between the maximum exposure of what Petitioner was expecting with the 50 percent deal was only one year less prison time than what he actually received.⁸ Given these circumstances, the trial court's conclusion that Petitioner would still have plead guilty, notwithstanding counsel's mis-advisement as to the percentage of good time credits, is not an "unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d)(2).

To the extent Petitioner contends that trial counsel was ineffective for failing to appear in person at his sentencing hearing and provided attorney/client advice in open court, the claim is nothing more than a conclusory allegation devoid of any resulting prejudice. At the sentencing hearing, Petitioner's out-of-town trial counsel appeared by telephone, and again represented to the Court that he had in fact mis-represented the plea agreement as consisting of 50 percent good time conduct credit and Petitioner would not have pled guilty otherwise. (CT 209-213.) At that hearing, the trial court specifically made its finding that despite counsel's misrepresentation, Petitioner would still have pled guilty, and that finding was final. (CT 213.) No further argument was needed by defense counsel and Petitioner sets forth no argument or evidence that would have changed the outcome of the proceedings. Because of the trial court's factual finding, defense counsel correctly conveyed to Petitioner that his only option at that point was to appeal the court's finding. (CT 218.) Petitioner has failed to demonstrate that he was deprived of his Sixth Amendment right to counsel at the sentencing hearing or that he was prejudiced thereby. See Strickland, 466 U.S. at 687. Accordingly, the state courts' determination of this issue was

---

⁷ Petitioner pled guilty to the charges contained in the Information with the agreement that the prosecutor would not amend the Information and attempt to sentence Petitioner under California Penal Code, section 667.61 (the so-called "one-strike" law), would strike one of the prison priors, and would dismiss a trailing case alleging sale of a controlled substance (Health & Saf. Code, section 11352, subd. (a). (CT 126-127, 129.)

⁸ As the transcripts reveal, Petitioner admittedly accepted a deal capped at 20 years in prison. If he were to receive 20 years at 50 percent, his prison time could have been as little as 10 years. Instead, the trial court sentenced Petitioner to a term of 13 years at 85 percent, or 11.05 years. Therefore, the difference between what he expected and what he got was 1.05 years.

not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

These Findings and Recommendations are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   December 10, 2007**              /s/ Sandra M. Snyder
                                            UNITED STATES MAGISTRATE JUDGE